IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSE LOUIS ROBINSON,

Petitioner,

v.

MARK NOOTH, Superintendent, Snake
River Correctional Institution,

Respondent.

Case No. 2:15-cv-00461-KI

OPINION AND ORDER

**KING, Judge.**

Petitioner, an inmate at Warner Creek Correctional Facility, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. Petitioner alleges six grounds of ineffective assistance of appellate counsel. Respondent moves the Court to deny habeas relief on the basis that Petitioner procedurally defaulted Grounds One through Four, and the state courts' denial of Grounds Five and Six is not contrary to, or an unreasonable application of, clearly established federal law. For the reasons set forth below, Petitioner's Amended Habeas Corpus Petition (ECF No. 27) is DENIED.

///

///

1 - OPINION AND ORDER

## BACKGROUND

On October 14, 2008, a grand jury indicted Petitioner on charges of Robbery in the Second Degree (two counts), Robbery in the Third Degree (five counts), Assault in the Fourth Degree (one count), and Failure to Report as a Sex Offender (one count). Resp't Exs. to Answer (ECF No. 14), Ex. 104.[1] The robbery charges stemmed from three purse snatchings on the morning of September 26, 2008. Resp't Exs. 104, 131; Tr. of State Proceeding (ECF No. 15) at 297-98. The victim of the first robbery was S. Hatley. The victims of the second robbery were M. Smith, E. Curtin, and V. Harrington. The victim of the third robbery was V. West. Resp't Ex. 104, Tr. at 38-39.

### I.    The First Robbery - S. Hatley

Hatley testified that on the morning of September 26, 2008, she was walking near Emanuel Hospital. An older Toyota or Datson abruptly pulled over in front of her. Tr. at 133-36. The driver of the car exited the vehicle and asked how to get to the emergency room. *Id.* at 136-37. As she was directing him, he rushed toward her and grabbed her canvas work bag and purse. *Id.* at 137-40. The car had a Washington license plate and was similar in appearance to the car pictured in the State's exhibits. *Id.* at 142-43.[2] Hatley described the robber to the police as a thin, black male with a bald head. *Id.* at 152.

---

[1] The charge of Failure to Report as a Sex Offender was severed from the other counts and Petitioner pled guilty to the charge. Resp't Exs. 105, 106.

[2] Hatley testified that she saw the license plate number of the car, but later learned that she was "one digit off." Tr. at 143. Police confirmed that the original license plate reported to police was 015RIJ. *Id.* at 276-70. Petitioner was pulled over in a car with Washington license 015RNJ. *Id.* at 236.

Hatley testified that a police officer showed her a photo montage on the day of the robbery. *Id.* at 148-49, 150. She told the officer that "perhaps" one of the men pictured in photographs numbers two or six was the robber. *Id.* at 149-50. Petitioner's photograph was number six. *Id.* at 300. At trial, Hatley identified Petitioner as the robber. *Id.* at 144. In so doing, she testified that it was "definitely" easier to identify Petitioner in person. *Id.*

Teresa Smith witnessed the robbery. *Id.* at 156. She testified that the robber's car was a lighter-colored, four-door sedan similar to the car pictured in the State's exhibits. *Id.* at 157-58. She reported the license plate number of the car to a hospital security guard. *Id.* at 158.

Esther Woods witnessed the robbery from the window of her second-floor office. *Id.* at 160-61. She testified that the robber's car was silverish and similar to the car pictured in the State's exhibits. *Id.* at 161. Woods identified Petitioner as the robber. *Id.* at 162. On cross examination, Woods testified that a week or more after the robbery, she spoke to a male police officer and a female detective and was shown a photo montage. *Id.* at 163-66. When defense counsel asked whether she was "able to identify anyone," she responded "yes." *Id.* at 166. At that point, defense counsel stated that he had "a matter for the court" and the jury was excused. *Id.*

After a discussion off the record, the prosecutor stated that he had no questions for Woods, and she was dismissed as a witness. *Id.* at 167-68. The trial judge then addressed defense counsel's concern that he had not been given a police report concerning a photo throw-down with Woods:

> THE COURT: [Defense counsel's] concern, for the record, was that you didn't have any discovery regarding that there had been a throw-down a week or so later with Ms. Woods. And Mr. Stanford indicated that he didn't have any information about that at this point as well. So that is an issue. But if it's not going to be proceeded on, if it's not going to be offered in evidence, that's one thing. We don't know what Ms. Woods would say.

3 - OPINION AND ORDER

> MR. CALHOUN [Defense Counsel]: Well, Judge, part of my concern is that we actually discovered that some of the witnesses had participated in a photo throw-down when my investigator talked to them. We didn't get any discovery from the State up until that point regarding identification. And actually, it struck me as odd that looking through a case with this many witnesses, our initial discovery was that one person had seen the photo throw-down, I believe, maybe two.
>
> But once my investigator talked to witnesses, I contacted Mr. Stanford and said what's going on here, there's other witnesses that say they have seen photo throw-downs but we don't have any reports. He said he was going to follow up on that by getting what I assumed to be--I believe he said all the information about the investigation regarding the photo throw-downs.
>
> So then I did receive after that one report regarding a photo throw-down. I believe it was Molly Curt--
>
> . . . .
>
> MR. CALHOUN: Smith and Curtin. One was Smith who did not identify my client. Curtin is someone who did. But--and I asked Mr. Stanford about all of the witnesses because I just thought (unintelligible audio) would show this to all the witnesses. So I don't have any police reports regarding any statements--that Woods made. And I don't have any police reports regarding--or detective reports regarding the photo throw-down.
>
> THE COURT: Well, I mean if it is a discovery violation, the sanction would be not to be able to use the evidence. So if--I think that's one sanction. And so if Mr. Stanford doesn't use the evidence, then--or I prohibit him from using the evidence, that's where that ends.

*Id.* at 168-70. The prosecutor agreed not to use the evidence and not to question Detective Coffey about a photo throw-down with Woods. *Id.* at 170-71.

During cross examination of Detective Coffey, however, defense counsel asked whether she showed Woods a photo montage. Coffey testified that she did not conduct a photo throw-down because she did not believe Woods would "be able to identify somebody from a second story window." Tr. Vol. II at 19-20. However, Coffey testified that she had the photo montage with her

4 - OPINION AND ORDER

when she spoke to Woods and didn't recall whether Woods looked at it. *Id.* at 20. Coffey also could not recall whether Woods stated she could identify the robber. *Id.*

## II.    The Third Robbery - V. West[3]

West testified that on the morning of September 26, 2008, she was walking to a funeral when a grayish blue car drove up near her. *Id.* at 246-47, 254. The driver got out of the car and asked her a question. *Id.* at 247. She answered him, continued walking, and then felt something on her left side. *Id.* at 248. She turned to see a man grab her purse, rush back to the car, and drive off. *Id.* at 248-49. West identified Petitioner as the robber. *Id.* at 249-50.

On cross examination, West testified that the prosecutor showed her a picture of Petitioner at the grand jury proceeding. *Id.* at 255. She testified that she probably told the prosecutor that the person in the picture was the robber, although the hairline was different. *Id.* at 256-57.[4] She emphasized "his face . . . I remember his face." *Id.* at 257. Detective Coffey later testified, however, that West told her that the robbery happened so fast that she wasn't sure she would be able to remember it. *Id.* Vol. II at 21.

Norvell Reed testified that he witnessed the purse snatching from his car. *Id.* at 259-60. He described the robber as a black man with short or no hair. *Id.* at 260.

///

///

---

[3] Petitioner was acquitted of the second robbery involving Smith, Curtin, and Harrington. Therefore, this Court does not summarize the testimony concerning it.

[4] The parties entered into a stipulation at trial, however, that West was unable to say who was in the photograph when she saw it at the grand jury proceeding. Tr. Vol. II at 30.

5 - OPINION AND ORDER

### III. The Police Investigation

On the day of the robberies, Portland Police Sergeant Doug Gunderson received information that a robbery suspect was driving a light blue Toyota Corolla with Washington license plate number 015RNJ. *Id.* at 275-77. Gunderson located the car and executed a stop at 11:46 a.m. *Id.* at 277-79, 282. Petitioner was driving the car and Officer Gunderson arrested him. *Id.* at 278-79. Petitioner told the officer that the car belonged to a friend. *Id.* at 280-81. Detective Coffey subsequently searched the vehicle and found a small piece of paper underneath the front passenger seat cover with the name V. West and a phone number written on it. *Id.* at 303-04.

### IV. The Verdict

Petitioner offered no witnesses in his defense. The jury found Petitioner guilty of committing the first and third purse snatching. He was convicted of Robbery in the Second and Third Degree for the first robbery (counts one and two), and Robbery in the Third Degree for the third robbery (count eight). Resp't Ex. 133. The trial court imposed an 86-month term of incarceration. Resp't Ex. 101 at 21-25.

### V. Post-Trial Proceedings

#### A. Direct Appeal

Petitioner filed a direct appeal challenging the trial court's failure to merge counts one and two into a single conviction. Resp't Ex. 106 at 5-6. Petitioner filed a *Pro Se* Supplemental Brief raising additional claims related to his conviction on those counts. Resp't Ex. 107. On appeal, the State conceded that the trial court erred in failing to merge Petitioner's convictions on counts one and two. Resp't Ex. 108. Accordingly, the Oregon Court of Appeals reversed Petitioner's convictions on counts one and two, and remanded with instructions to enter a judgment of conviction

for one count (second-degree robbery) and for resentencing. *State v. Robinson*, 241 P.3d 309 (Or. App. 2010); Resp't Ex.109.[5] On remand, the trial court again sentenced Petitioner to an 86-month term of incarceration. Resp't Ex. 101 at 4-7.

## B. Post-Conviction Relief

Petitioner subsequently sought state post-conviction relief (PCR) on the grounds that he received ineffective assistance of trial counsel (four particulars) and ineffective assistance of appellate counsel (seven particulars). Resp't Ex. 117. With respect to appellate counsel, Petitioner alleged that counsel was ineffective for failing to raise on appeal:

(1) the trial court's denial of Petitioner's request to suppress the in-court identifications;

(2) double jeopardy;

(3) the trial court's failure to dismiss the charges of robbery in the second and third degree relating to Susan Hatley;

(4) issues relating to Esther Wood who "did not identify [P]etitioner as the assailant prior to trial" but testified that she made a positive pre-trial photo identification;

(5) prosecutorial misconduct;

(6) that the trial judge and prosecutor used suggestive identification procedures; and

(7) that the trial judge violated Petitioner's state and federal constitutional rights by denying his Motion to Exclude In-Court Identification.

*Id.* at 4-5.

---

[5] Petitioner filed a *pro se* Petition for Review in the Oregon Supreme Court arguing that, under Oregon law and the U.S. Constitution, the jury's finding that he was guilty of Robbery in the Third Degree precluded his conviction for Robbery in the Second Degree. Resp't Ex. 110. The Oregon Supreme Court denied review. *State v. Robinson*, 241 P.3d 419 (Or. 2011).

At the conclusion of the PCR proceeding, the court denied Petitioner's in-court identification and double jeopardy claims as follows:

> [T]here is no double jeopardy issue here. Counts 1 and 2 are on the same complaining witness. The jury convicted on both. They were charged together. The jury voted separately on each of those counts. Those counts were eventually merged after your successful appeal. Merger is the correct procedure. It is not double jeopardy.
>
> . . . .
>
> Trial attorney did move to prevent in court ID but the Court denied. There are no grounds, there is no legal basis to dismiss a case because a victim does -- didn't identify a suspect in the throw down. The -- a DA can prove a case without any victim identifying anybody. The DA needs to prove ID but not necessarily by an ID from the victim. There are cases with fingerprints, there are cases with DNA. There are all kinds of other cases in which identity is proven without an identification by the complaining witness. So, there's no grounds to dismiss if a victim can't ID. The issue is, can the State prove ID somehow, however that happens to be.

Resp't Ex. 135 at 36-37. In a subsequent written decision, the PCR court held that appellate counsel's decision not to raise the in-court identification and double jeopardy claims on appeal was reasonable because the issues have no legal merit, and there was no prejudice. Resp't Ex. 136 at 2.

## C. PCR Appeal

PCR appellate counsel filed an appeal, but certified there were no non-frivolous issues to raise on appeal. Resp't Ex. 137 at 4; *see State v. Balfour*, 814 P.2d 1069, 1080 (Or. 1991) (setting forth procedure to be followed when counsel believes appeal has no merit); *see also* Or. R. App. Proc. 5.90. Petitioner filed a Section B to the *Balfour* brief assigning two errors. Petitioner alleged that the PCR court erred in rejecting his claims that appellate counsel was ineffective for failing to raise on appeal the trial court's denial of (1) Petitioner's Motion to Exclude In-Court Identifications;

and (2) Petitioner's "Motion for Jeopardy Protection." Resp't Ex. 137 at 6, 10-13, 35.[6] In the body of his appellate brief, Petitioner included a section captioned "Questions Presented" in which he stated:

> I. (Case 1) Susan Hatley-Is in court identification in a show up type procedure too suggestive and unfair? Victim had already done a negative ID.
>
> (Case 1) Esther Woods-Is testifying to a positive photo line up too prejudicial if this procedure was not administered to you?
>
> IB. (Case 2) Versie West-After a victim cannot ID suspect to police, or a single photo presented by prosecution, is the in court ID alone enough to prove reliability and identification?
>
> II. Under double jeopardy protection laws, is the State allowed to keep the greater conviction (robbery 2) and the 70 month sentence or the 16 month sentence that goes with (Robbery 3) when a finding of guilty of a lesser included is a[n] acquittal of the greater (in a single transaction).

*Id.* at 10.

Petitioner also challenged the trial court's admission of in-court identifications by witness Hatley, Woods, and West in his "Summary Argument," "Preservation of Error," and throughout the argument section of his brief. *Id.* at 11-13; *see also id.* at 18, 21-24, 29, 32-33. The Oregon Court of Appeals affirmed without opinion. Resp't Ex. 141; *Robinson v. Nooth*, 342 P.3d 181 (Or. App. 2014). Petitioner filed a Petition for Review to the Oregon Supreme Court incorporating his appellate brief by reference. Resp't Ex. 139. The Oregon Supreme Court denied review. Resp't Ex. 140; *Robinson v. Nooth*, 344 P.3d 1111 (Or. 2015).

---

[6] These assignments track the language of Grounds One, Five, and Six of Petitioner's Amended Habeas Petition (ECF No. 27) at 7-8.

In the instant proceeding, Petitioner alleges six grounds of ineffective assistance of appellate counsel. Respondent moves the Court to deny habeas relief on the basis that Petitioner procedurally defaulted Grounds One through Four, and the state courts' denial of Grounds Five and Six is not contrary to, or an unreasonable application of, clearly established federal law.

## DISCUSSION

### I.  Procedural Default (Grounds One through Four)

In Petitioner's Grounds One through Four, Petitioner alleges that appellate counsel was ineffective for failing to raise on appeal (1) the trial court's denial of his motion to suppress in-court identifications; (2) "issues related to Esther [W]oods" who did not identify Petitioner prior to trial; (3) that "the Judge and D.A. decided to use suggestive [identification] procedures;" and (4) prosecutorial misconduct by proceeding to trial knowing that the trial testimony "would be significantly different from the initial identification." Pet'r's Am. Pet. (ECF No. 27) at 7-8. Respondent moves the Court to deny habeas relief on the basis that Petitioner did not raise these claims on appeal from the denial of post-conviction relief.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by "fairly presenting" his claim to the appropriate state courts at all appellate stages afforded under state law. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Carrillo-Carrillo v. Coursey*, 823 F.3d 1217, 1220 (9th Cir. 2016); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004). If the petitioner procedurally defaults his available state remedies, habeas relief is precluded absent a showing of cause and prejudice, or that the failure to consider the defaulted

claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

This Court agrees that Grounds for Relief Three and Four were not raised on appeal from the denial of post-conviction relief. Accordingly, those grounds are procedurally defaulted. Petitioner has not shown cause and prejudice to excuse his default, or that the failure to consider the claims will result in a miscarriage of justice. Accordingly, habeas relief is precluded on those grounds.

Additionally, this Court agrees with Respondent's concession that Grounds One and Five "appear to allege the same claim." Resp't Resp. to Am. Pet. at 2, n.3. Accordingly, because Ground Five was properly exhausted, the Court concludes that Ground One was exhausted and will address the merits of both grounds together.

However, contrary to Respondent's argument, Petitioner fairly presented Ground Two relating to whether Esther Woods should have been permitted to make an in-court identification. The propriety of Woods' testimony was addressed repeatedly in Petitioner's appellate brief, *albeit* in sections other than his "Assignment of Errors." Nevertheless, Oregon appellate courts give *pro se* appellants filing a *Balfour* brief "leeway," and do not require exact compliance with the rules of appellate briefing. *Carrillo-Carrillo*, 823 F.3d at 1222. Hence, the fact that the Petitioner included argument on Ground Two under the wrong headings does not dictate the conclusion that the ground was not fairly presented. Accordingly, Ground for Relief Two was fairly presented to the state appellate courts.

///

///

///

## II.     The Merits: Ineffective Assistance of Appellate Counsel

### A.     Standards

Pursuant to 28 U.S.C. § 2254(d), a petition for writ of habeas corpus filed by a state prisoner shall not be granted, with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014). Because the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court summarily denied review, this Court looks to the last reasoned state court decision when applying this standard, which here is the decision of the state PCR court. *See Carrillo-Carrillo*, 823 F.3d at 1222.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel (IAC). *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984). Petitioner must demonstrate that (1) appellate counsel was objectively unreasonable in failing to discover the non-frivolous issue for appeal; and (2) there is a reasonable probability that, but for appellate counsel's failure to raise the issue, Petitioner would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010). This Court's review of counsel's assistance is "doubly deferential" in that this Court takes a highly deferential look at counsel's performance under the deferential lens of § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011); *Zapien v. Martel*, 805 F.3d 862, 869 (9th Cir. 2015).

B. **Failure to Appeal Trial Court's Denial of Motion to Exclude In-Court Identification (Grounds One and Five)**

In Grounds for Relief One and Five, Petitioner alleges that appellate counsel was ineffective for failing to appeal the trial court's denial of his motion to exclude in-court identifications. Petitioner argues that permitting witnesses to identify him in court, after failing to identify him pretrial from a photo montage or individual photograph, violated his right to due process. Pet'r's Am. Habeas Pet. at 13; Pet'r's Memo. of Auth. in Support of Federal Habeas Pet. (ECF No. 28) at 20, 24-28.[7] Specifically, Petitioner argued that "Susan Hatley should never have been allowed to do in-court I.D., she failed a photo line up 5 hours after the event." Pet'r's Am. Habeas Pet. at 13. Additionally, Petitioner argues that "West failed to recognize a booking photo of petitioner taken the day of the crime at a Grand Jury proceeding." *Id.* Petitioner concludes:

> Denying the motion to exclude in court I.D. made the I.D. procedure unfair and unreliable. These victims and witnesses are just coming to court and agreeing with the state that the only African American at the defense table is the pepartrator [sic] no one offers a reason why they failed a line up, refused a line up or failed to recognize a photo or describe the perpatrator [sic] before trial. The Supreme Court has ruled in court I.D. is too suggestive and by itself it's a denial of Due Process. Federal law has the fair I.D. requirement. Fair I.D. must be done.

*Id.* at 15.

The trial judge held a preliminary hearing, and denied Petitioner's motion to exclude Hatley and West's in-court identifications because there was no evidence that they were subject to suggestive pretrial identification procedures. Tr. at 103-06.

---

[7] When referring to Petitioner's Memorandum of Authorities in Support of Habeas Petition, this Court uses the pages numbers assigned by Petitioner.

Appellate counsel's refusal to raise the in-court identification issue on appeal was neither deficient performance nor prejudicial because there is *no* evidence that the pretrial identification procedures (1) violated the Due Process Clause because they were so unnecessarily suggestive to give rise to a substantial likelihood of irreparable misidentification;[8] or (2) were inadmissible under Oregon evidentiary standards because they were suggestive and not otherwise shown to be reliable.[9] Moreover, appellate counsel reasonably concluded that any error was harmless given the testimony of other witnesses describing the robber and his car, and the testimony of the arresting police officer who apprehended Petitioner in the car which contained a piece of paper with West's name and phone number on it. *See United States v. Carr*, 761 F.3d 1068, 1074 (9th Cir. 2014) (even if pretrial identification procedure was suggestive and the in-court identification unreliable, court must consider whether admission was harmless error). Hence, the assignment of error would have lacked merit.

Further, Petitioner offers no state or federal case law to support his claim that the Due Process Clause is violated by the admission of an in-court identification by a witness who did not make a pretrial identification. Although the Supreme Court has recognized that eyewitness testimony may be flawed, "the potential unreliability of a type of evidence does not alone render its introduction at [a] defendant's trial fundamentally unfair." *Perry v. New Hampshire*, 132 S.Ct. 716,

---

[8] *See Perry v. New Hampshire*, 132 S.Ct. 716, 724-25 (2012); *Simmons v. United States*, 390 U.S. 377, 384 (1968).

[9] *See State v. Classen*, 590 P.2d 1199, 1203 (Or. 1979). The Court notes that *Classen* was the applicable evidentiary standard at the time of Petitioner's trial and appeal. The standard was modified in *State v. Lawson/James*, 291 P.3d 673, 692-93 (Or. 2012). Given the totality of the evidence, the in-court identifications were admissible under either evidentiary standard.

728-29 (2012) (upholding admission of in-court eyewitness testimony by witness who was unable to identify defendant in pretrial photo throw-down). Hence, appellate counsel's failure to challenge the in-court identifications on the basis that the witnesses did not make positive pretrial identifications was neither deficient performance nor prejudicial. Accordingly, the PCR courts' rejection of this IAC claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

### C. Failure to Appeal "issues related to Esther Woods" (Ground Two)

Petitioner contends that appellate counsel was ineffective for failing to raise on appeal "issues related to Esther Woods." Pet'r's Am. Habeas Pet. (ECF No. 27) at 11. Petitioner explains that his right to due process was violated because Woods was not shown a photo montage, and falsely testified that she identified Petitioner's photograph:

> Esther Woods was never offered a line up by police because of a 2nd story vantage point so when she testified to a positive photo line up in front of the jury that's perjury of a material fact. She was removed from the stand but only after the jury heard about a positive I.D. that was never done. There was no curative instruction given, the petitioner was given a discovery violation that was worthless because the state used the Esther Woods evidence in closing exposing the jury to testimony that is not true is not allowed.

*Id.* at 13.

Contrary to Petitioner's allegation of perjury, the record is unclear whether Woods was shown a photo throw-down prior to trial. On cross examination, Woods testified that she was shown a photo montage by a male police officer and a female detective. Tr. at 163-66. Detective Coffey testified that she did not *conduct a photo throw-down* with Woods, but that Woods may have seen a photo montage sitting on the outside of Coffey's folder. *Id.*, Vol. II at 19-20. Coffey was unable to recall whether Woods stated she could identify Petitioner. *Id.* at 20. Officer McLoughlin, who

15 - OPINION AND ORDER

showed at least one other witness a photo montage, was not available to testify at trial to clarify the issue. *See id.* at 27-29, 52-53, 171.

In any event, when Woods testified to identifying Petitioner in a photo throw-down, there was a discussion outside the presence of the jury concerning the prosecutor's failure to produce a report of the throw-down. *Id.* at 167-70. The prosecution agreed not to ask Woods any questions about the possible throw-down and did not reference it in closing argument. *See id.* at 168, 170, Vol. II at 61, 83. The foregoing procedure did not violate Petitioner's right to due process.

It is for the jury to determine the reliability of Woods' testimony. *See Perry*, 132 S. Ct. at 728. Any prejudice caused by the prosecutor's failure to disclose a report during discovery concerning the throw-down does not give rise to a constitutional claim and, in any event, was remedied by the prosecutor's agreement not to question Woods about the throw-down and not to mention it in closing argument. Consequently, appellate counsel was not deficient in failing to raise an assignment of error concerning Woods' testimony, and there is no reasonable probability that the assignment would have been successful. Accordingly, the PCR court's rejection of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

### D.   Failure to Appeal Double Jeopardy Issue (Ground Six)

In his Sixth Ground for Relief, Petitioner alleges that appellate counsel was ineffective for failing to raise the "double jeopardy issue preserved at sentencing." Pet'r's Am. Pet. at 8. Petitioner argues that although counts one and two merged, double jeopardy precluded his conviction for Robbery in the Second Degree after being convicted of Robbery in the Third Degree. Petitioner's double jeopardy argument is premised on Oregon's former jeopardy statute, Or. Rev. Stat. §

131.515(4), which provides that "[a] finding of guilty of a lesser included offense *on any count* is an acquittal of the greater inclusive offense *only as to that count.*" (Emphasis added.)

Petitioner reasons that pursuant to Or. Rev. Stat. § 131.515(4), his guilty verdict of Robbery in the Third Degree (count two) operated as an acquittal of his Robbery in the Second Degree (count one). Hence, Petitioner contends that he should serve the 16-month sentence originally imposed by the trial court on count two, and not the 70-month sentence on count one. Moreover, Petitioner argues that the Oregon Court of Appeals' decision on direct appeal, merging his convictions on counts one and two, did not remedy the double jeopardy violation. Pet'r's Am. Habeas Pet. at 16-17; Pet'r's Mem. of Auth. in Supp. of Federal Habeas Pet. at 67-69, 75-78.

Appellate counsel refused to raise Petitioner's double jeopardy argument on appeal, explaining to Petitioner that "the 'former jeopardy' provisions do not apply to counts brought at the same time before the same jury." Resp't Ex. 125. The PCR court agreed, denying Petitioner's ineffective assistance of appellate counsel claim on the basis that there was no double jeopardy violation and the merger of the two counts was "the correct procedure." Resp't Ex. 135 at 36.

Oregon's former jeopardy statute, Or. Rev. Stat. § 131.515, prohibits *consecutive* prosecutions. *See State v. Sawatzky*, 125 P.3d 722, 696-97 (Or. 2005) (double jeopardy did not preclude re-sentencing on remand because it is a single prosecution); *State v. Lyons*, 985 P.2d 204, 208 (Or. App. 1999) (statute bars consecutive prosecutions for same offense and successive prosecutions for all known charges arising out of the same criminal episode). The same is true of the Oregon and U.S. Constitutions. *See Warner*, 153 P.3d at 680 (Article I, section 12, of the Oregon Constitution prohibits successive prosecutions); *Blueford v. Arkansas*, 132 S. Ct. 2044, 2048 (2012) ("Double Jeopardy Clause protects against being tried twice of the same offense").

17 - OPINION AND ORDER

Petitioner was not subjected to a consecutive prosecution on the charge of Robbery in the Second Degree, after being convicted of Robbery in the Third Degree. Moreover, he was not charged with Robbery in the Second and Third Degrees in a single count so as to trigger Or. Rev. Stat. § 131.515(4). *See State v. Warner*, 112 P.3d 464, 470 (2005) ("[F]or ORS 131.515(4) to operate on a greater offense, the greater offense must be charged in the same count as the lesser-included offense for which the defendant is convicted."). Accordingly, appellate counsel was not deficient, and there is no reasonable probability that, but for appellate counsel's failure to raise the double jeopardy claim, there is a reasonable probability that Petitioner would have prevailed on appeal. The PCR court's rejection of his claim is neither contrary to, nor an unreasonable application of, clearly established federal law.[10]

## CONCLUSION

Based on the foregoing, Petitioner's Amended Habeas Corpus Petition (ECF No. 27) is DENIED, and this proceeding is DISMISSED, with prejudice.

///

///

///

///

---

[10] To the extent that the PCR court's rejection of this IAC claim was premised on its construction of Or. Rev. Stat. § 131.515(4) and/or on the conclusion that merger was the proper procedure under Oregon law, this Court defers to those state law rulings. *See Woods v. Sinclair*, 764 F.3d 1109, 1138-39 (9th Cir. 2014).

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability is DENIED. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 21st day of December, 2016.

Garr M. King
United States District Judge